IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 3:21-15 |
| ) | Judge Stephanie L. Haines |
| AMY BENNETT ) | |

## OPINION

In compliance with the Court's Jury Trial Order (ECF No. 113), on October 2, 2023, the Government filed its Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 126), and on October 9, 2023, Defendant Amy Bennett ("Defendant") filed her Response Brief to the Government's Notice of Intent to Present Evidence Pursuant to F.R.E. 404(b) (ECF No. 131). In her Response Brief (ECF No. 131), Defendant requests that the Court prohibit the Government from introducing at trial evidence as to Defendant's parole status, Defendant's conduct relating to urinalysis taken by Defendant's parole officers, and testimony from witness Amanda Bottenfield regarding Defendant's alleged drug trafficking.

### I.      Standard of Review

The Court notes that it is well established by the Third Circuit that Rule 404(b) is a rule of general exclusion and carries with it no presumption of admissibility. *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (internal citations omitted). That is, "Rule 404(b) directs that evidence of prior bad acts be excluded—unless the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *Id.* Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has "the burden of demonstrating [the evidence's] applicability." *Id.*

Rule 404(b) provides, in pertinent part, that:

1

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses ... This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

The Third Circuit has repeatedly instructed that admission of other-acts evidence under Rule 404(b) requires satisfaction of the following four distinct steps set forth in *Caldwell*. First, the proponent of the other-acts evidence must identify a proper, non-propensity purpose that is "at issue" in, or relevant to, the case at hand. *Caldwell*, at 276. Second, the proponent must carefully articulate how the other-acts evidence is relevant to proving that purpose without relying on propensity. *Id*. This step requires the proponent to set forth a "chain of inferences" that connects the other-acts evidence to the proper purpose, "no link of which is a forbidden propensity inference." *Id*. at 277 (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)). Third, the court must perform a Rule 403 balancing analysis to ensure that the probative value of the other-acts evidence is not substantially outweighed by its "inherently prejudicial nature[.]" *Id*. (internal citation omitted). Finally, if requested, the court must provide a limiting instruction. *Id*. (internal citations omitted).

The Third Circuit has also emphasized that Rule 404(b) must be applied with "careful precision," and that evidence of defendant's prior bad acts is not to be admitted unless both the proponent and the district court plainly identify a proper, non-propensity purpose for its admission. *United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014) (citing *Caldwell*, 760 F.3d at 274); *United States v. Repak*, 852 F.3d 230, 244 (3d Cir. 2017).

2

**II.     Analysis**

The Government's 404(b) Notice (ECF No. 126) identifies that it will be introducing evidence relating to: (A) Defendant's parole status and conduct related to the urinalysis, and (B) 404(b) evidence regarding Defendant's drug trafficking. As to Category A, the Government intends to call two parole officers, Adam Henderson and Jacqueline Conners, to testify regarding Defendant's parole status and their interactions with Defendant on April 12, 2021, the date of the charged offense. The proposed testimony would include Defendant's failure of a urine drug screen administered by the parole officers and the parole officers' subsequent discovery of the approximately 20 grams of fentanyl at issue in the charged offense. As to Category B, the Government intends to call Co-Defendant Tricia Crawley ("Crawley") and witness Amanda Bottenfield ("Bottenfield") to testify as to Defendant's involvement in the trafficking of heroin, fentanyl, and/or crack cocaine. Defendant argues the portions of the parole officers' testimony relating to Defendant's parole status and Defendant's conduct during the parole visit and the entirety of Bottenfield's testimony are propensity evidence which is inadmissible under Rule 404(b). The Court addresses Defendant's arguments below.

**A. Defendant's Parole Status and Conduct Related to the Urinalysis**

The parties do not dispute that Defendant was under the supervision of the Pennsylvania Board of Probation and Parole ("PBPP") on the date of the charged offense. The Government's 404(b) Notice (ECF No. 126) states the parole officers called by the Government will testify that they had received information that Defendant and Crawley were providing fake/clean urine and so they visited the Defendant and Crawley's residence at 407 Wilbur Street on April 12, 2021 to conduct a supervised urine screen. *Id.* at ¶8(c-d). During the visit, the parole officers witnessed

3

Defendant and Crawley attempt to provide fake/clean urine, and the drug screens conducted on Defendant and Crawley tested positive for cocaine and amphetamines. *Id.* at ¶8(e-f).

In addition to this testimony, the Government states it will move into evidence the following three forms used by the PBPP: (1) the PBPP-10 form, which will show that Defendant was released on parole and the effective date of her parole; (2) the PBPP-11 form, which sets forth the conditions of Defendant's supervision; and (3) the Home Provider Agreement Letter, which sets forth that Defendant was a permitted resident at 407 Wilbur Street, South Fork, PA 15956. The Government has attached the proposed exhibits to its 404(b) Notice (ECF Nos. 126-1 through 126-3) and redacted the offense charged section for the PBPP-10 form (ECF No. 126-1) to remove reference to the conviction which led to Defendant being on parole.

The Government states that the evidence of Defendant's parole status, the information regarding the fake urine tests, Defendant and Crawley's attempt to provide fake/clean urine, and the failed urine screen serve a non-propensity purpose because these facts are necessary to explain the basis for the parole officers' visit to and search of 407 Wilbur Street on April 12, 2021. The Government believes that it must first explain Defendant's parole status to justify the reason for the parole officers' visit based on the information related to falsified urine screens and the authority of the parole officers to then conduct the warrantless search. The Government also states that the admission of the Home Provider Agreement Letter (ECF No. 126-3) proves that Defendant was a resident of 407 Wilbur Street, and therefore makes more probable the fact that she had the ability to exercise dominion and control over items found there, including the approximately 20 grams of fentanyl found by parole officers.

Defendant contends that evidence of Defendant's parole status and her conduct related to the urine screen cannot be offered for a proper purpose under Rule 404(b), and this evidence is

4

unfairly prejudicial under Rule 403. As to Defendant's parole status, Defendant argues the Government's introduction of the PBPP-10 and PBPP-11 forms (ECF No. 126-1 and 126-2) shows only that Defendant was on parole at the date of the charged offense, indicating she has the propensity to commit criminal offenses resulting in parole, which is prohibited by Rule 404(b). Defendant acknowledges that the Government must establish a foundation to explain the parole officers' visit to and search of Defendant's residence but suggests that Defendant and the Government stipulate that Defendant was "under supervision".

Defendant also argues that the probative value of the parole officers' testimony regarding the falsified urine screen information and Defendant's positive test for cocaine and amphetamines is not outweighed by the prejudicial effect of this evidence, as the evidence shows only that Defendant was addicted to drugs and attempted to hide her usage through production of fake/clean urine. According to Defendant, referring to Defendant as being "under supervision" both removes the need to reference Defendant's urine screen and explains the parole officers' ability to conduct a visit and search of Defendant's residence.

In order to lay the foundation for the charged offense, the jury must hear testimony from the parole officers regarding the search that led to their discovery of the fentanyl charged in this case. Therefore, the Court finds the Government may make reference to Defendant being on parole and that being subject to urine screens and home searches were conditions of that parole in order to complete the story of the events that led to the charged offense.

The case law on this issue supports that reference to Defendant's parole status and parole conditions is appropriate for the non-propensity purpose of completing the story. In *United States v. Benjamin*, 711 F.3d 371 (3d Cir. 2013), the Third Circuit characterized the defendant's parole status as "helpful background" and held that defendant's parole status was therefore admitted for

a proper purpose under Rule 404(b). *Id.* at 380-81 ("[A]llowing the jury to understand the circumstances surrounding the charged crime — completing the story — is a proper, non-propensity purpose under Rule 404(b)."). In that case, as here, the trial could not have been conducted without the jury hearing that the defendant was on parole as the evidence of defendant's parole status was relevant to the jury's understanding of why the search took place. *See also United States v. Cruz*, 326 F.3d 392, 394 (3d Cir. 2003) ("Here the government articulated the logical inferences that render Cruz's parole status relevant to establishing Cruz's motive, intent and method of concealing his illegal drug activity in order to avoid the risk of parole revocation. A defendant's parole status has been held to be probative of why a defendant would take extra steps to hide his criminal activity.").

The Third Circuit in *Benjamin* further noted that the probative value of defendant's parole status was not substantially outweighed by whatever limited prejudice may have been caused, as such prejudice was minimized by the district court preventing the Government from presenting evidence of defendant's underlying drug trafficking convictions. Here, the Government states it will refrain from inquiring what type of offense Defendant was on parole for and has not included in its 404(b) notice any evidence relating to the underlying offense.

Regarding Defendant's parole forms, the Home Provider Letter Agreement (ECF No. 126-3) makes more probable the fact that Defendant exercised dominion and control over items found in the residence. The Court agrees that proof of Defendant's residency at the location where the approximately 20 grams of fentanyl were found is highly probative as to whether Defendant possessed with intent to distribute those drugs. Both the PBPP-11 form (ECF No. 126-2) and the Home Provider Agreement Letter (ECF No. 126-3) also evidence Defendant's parole status and the home search and drug testing conditions without reference to Defendant's underlying

conviction. This is in contrast to the PBPP-10 form (ECF No. 126-1) which, though the underlying offense section is redacted, still clearly alludes to Defendant's "previous sentence" in Bedford County, her confinement placement in "State Correctional Institution Muncy," and references an existing detainer in Maryland. Accordingly, the Court finds the Government may offer the PBPP-11 form (ECF No. 126-2) and the Home Provider Agreement Letter (ECF No. 126-3) for the non-propensity purpose of establishing Defendant's parole status and drug testing and search conditions but the Government is prohibited from introducing the PBPP-10 form (ECF No. 126-1). Whatever probative value the PBPP-10 form (ECF No. 126-1) has to show Defendant's parole status will be demonstrated through the PBPP-11 form (ECF No. 126-2) and the parole officers' testimony, and the docket like format of the PBPP-10 form and its references to Defendant's "previous sentence" in Bedford County, state correctional incarceration, and Maryland detainer makes it far more prejudicial than it is probative.

As to the parole officer's testimony regarding falsified urine screen information and Defendant's positive test for cocaine and amphetamines, the Government argues only that this evidence should be admitted because it also completes the story. However, to be relevant, proffered evidence must fit into "a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *United States v. Repak*, 852 F.3d 230, 243 (3d Cir. 2017). The information regarding the falsified urine screens and the positive drug test do not relate to the elements of the charged offense, rather, as Defendant states, they show only that Defendant was addicted to drugs and attempted to hide her usage through production of fake/clean urine.

Similarly, the Court agrees with Defendant that the probative value of the parole officer's testimony regarding falsified urine screen information and Defendant's positive drug test to

complete the story is not outweighed by the prejudicial effect of this evidence. The Government can refer to Defendant's parole status and explain that the parole officers visited Defendant's residence on April 12, 2021 to perform a urine screen pursuant to Defendant's parole conditions. The parole officers may also testify as to the non-404(b) acts and conduct of the Defendant that led to them searching the residence and discovering the fentanyl charged in this case. Based on the 404(b) Notice (ECF No. 126), it does not appear that the falsified urine screen information and Defendant's positive drug test are necessary to explain the events that led up to the parole officers' discovery of the fentanyl, and therefore, the minimal probative value of this evidence to complete the story is outweighed by its prejudicial effect.

Accordingly, the Government is prohibited from introducing evidence or eliciting testimony relating to information regarding the falsified urine screens or Defendant's positive drug test, but the Court will permit the Government to reference Defendant's parole status and the drug testing and search conditions of her parole, as well as admit the PBPP-11 form (ECF No. 126-2) and the Home Provider Letter Agreement (ECF No. 126-3), for the non-propensity purpose of completing the story of the events that led to the charged offense. This evidence is relevant to the charged offense, and as discussed herein, the probative value of this evidence outweighs any prejudicial effect it may have on the jury. Further, introduction of Defendant's parole status is minimized by the exclusion of any reference to Defendant's underlying offense that led to her parole. The minimal risk of the jury drawing an improper propensity inference does not substantially outweigh the probative value of the proposed evidence, and the Court will further minimize this risk by providing a proper limiting instruction on any admitted 404(b) evidence as requested by the parties.

### B. Testimony of Witness Amanda Bottenfield

The Government states it seeks to call witness Amanda Bottenfield to testify that on numerous occasions, including up to the date of the charged offense, Defendant was engaged in the distribution of heroin/fentanyl. Specifically, the Government states that agents from the Drug Enforcement Administration ("DEA") conducted an interview with Bottenfield on November 5, 2021, while she was detained at the Bedford County Jail (ECF No. 126 at ¶12). Based on that interview, the Government believes that, when called to testify, Bottenfield will testify that she has known Defendant since around 2016, having first met her around Hancock, Maryland when both Bottenfield and Defendant were acquiring drugs. *Id.* at ¶13(a-b). Bottenfield knew Defendant was selling heroin/fentanyl from Defendant's shared residence with Crawley, and Bottenfield never purchased heroin/fentanyl from Crawley, but rather, she was buying heroin/fentanyl from Defendant regularly up to the time Defendant was arrested on April 12, 2021. *Id.* at ¶13(c-e).

Specifically, Bottenfield bought heroin/fentanyl from Defendant daily. *Id.* at ¶13(f). She recalled routinely paying Defendant $80 for what she believed to be a 0.02-gram quantity of heroin/fentanyl, and Bottenfield would routinely argue with Defendant about the price for the quantity of heroin/fentanyl she received from Defendant. *Id.* at ¶13(g-j). Defendant would routinely package heroin/fentanyl for sale in folded magazine paper and would refer to the folded magazine paper with the heroin/fentanyl inside as a "bundle." *Id.* at ¶13(k-l).

Bottenfield also believed that Defendant and Crawley were both using heroin/fentanyl up to the time of their arrests on April 12, 2021, but, as a regular user of heroin/fentanyl, Bottenfield believed 20 grams of heroin/fentanyl was a large quantity that would be for both personal use and sale to others. *Id.* at ¶13(m-n). Bottenfield had been to the South Fork residence shared by Defendant and Crawley to purchase heroin/fentanyl on at least 100 occasions, but sometimes she would meet Defendant at gas stations/convenience stores and other locations to buy

heroin/fentanyl. *Id.* at ¶13(o-p). At these times, Crawley was often in the car—usually as the driver, and Defendant and Crawley utilized a red SUV as of November 2021. *Id.* at ¶13(r). Bottenfield also knew that using money from drug sales, Defendant and Crawley would go on "shopping sprees." *Id.* at ¶13(s).

Defendant is charged with possession with intent to distribute fentanyl in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C). Therefore, the Government must prove, beyond a reasonable doubt, first, that Defendant possessed a mixture or substance containing a controlled substance; second, that Defendant possessed the controlled substance knowingly or intentionally; third, that Defendant intended to distribute the controlled substance; and fourth, that the controlled substance was fentanyl. *See Mod. Crim. Jury Instr. 3d Cir. 6.21.841A*.

The Government contends that Bottenfield's testimony satisfies the four-step test for Rule 404(b) evidence admissibility as follows. First, the evidence is offered for the non-propensity purpose of proving the Defendant possessed with intent to distribute the approximately 20 grams of fentanyl found in Defendant's residence on April 12, 2021 (ECF No. 126 at p. 7-8). The testimony will further show Defendant's knowledge and opportunity to acquire/possess distribution level quantities of heroin/fentanyl. *Id.*

Second, Bottenfield's testimony relates to non-propensity purposes because it shows that on numerous prior occasions, and leading up to the date of the charged offense, Defendant was engaged in the distribution of fentanyl. *Id.* at ¶8. As to the third step, the probative value of the evidence is not substantially outweighed by its prejudicial effect as the testimony is highly probative to the elements of the charged offense. Lastly, as to the fourth step, the Government acknowledges there is a risk Bottenfield's testimony could be construed by the jury as propensity evidence but argues such risk can be contained through the issuance of a limiting instruction.

Defendant counters that Bottenfield's testimony about Defendant's alleged drug trafficking cannot be offered for a proper purpose under Rule 404(b), and it is unfairly prejudicial under Rule 403 (ECF No. 131 at p. 4). Defendant argues the Government has failed to meet its burden to show how the testimony would "fit into a chain of logical inferences consistent with its theory of the case," quoting *United States v. Sampson*, 980 F.2d 883, 88 (3d Cir. 2012). Defendant asserts Bottenfield's testimony supports only that because she committed drug trafficking before, Defendant is more likely to have committed the charged offense, i.e. the very propensity use prohibited under Rule 404(b).

The Court disagrees and finds the Government has shown how Bottenfield's testimony "should work in the mind of a juror to establish" Defendant's knowledge and intent to possess with the intent to distribute the fentanyl charged in this case. *See United States v. Repak*, 852 F.3d 230, 244 (3d Cir. 2017) (citations omitted). The Government has set forth the facts of Bottenfield's testimony and shown how these facts create a chain of inferences that would link to the facts of the charged offense. As stated by the Government, the consistency with which Bottenfield purchased heroin/fentanyl from Defendant makes more probable the fact that Defendant had access to large quantities of heroin/fentanyl, such as the large quantity of fentanyl seized from Defendant's residence on April 12, 2021. Bottenfield's testimony that she purchased heroin/fentanyl from Defendant, and not Crawley, also is probative of Defendant's knowledge and intent to possess with the intent to distribute the fentanyl charged in this case.

As part of its 404(b) Notice, the Government contends that Bottenfield's testimony should be admitted as Defendant's case is similar to another case from this district, *United States v. Davis*, No. 2:14-271, 2016 WL 3406056 (W.D. Pa. June 21, 2016). In that case, as summarized by the Government, Judge McVerry admitted evidence that defendant previously possessed heroin in

11

packaging with a distinctive stamp to show defendant's opportunity, intent, and identity in a separate trial for distributing heroin in packaging with the same distinctive stamp.  Defendant argues the *Davis* ruling is readily distinguishable as Bottenfield is not testifying to Defendant's distinctive habits or routine regarding the packaging of heroin/fentanyl, but rather Bottenfield will testify only that she previously bought drugs from Defendant to prove the charged offense—an impermissible propensity evidence under Rule 404(b).

Though there may be differences between the nature of testimony admitted in *Davis* and Bottenfield's testimony in this case, these differences do not make this case distinguishable from the wealth of case law holding that Bottenfield's testimony is admissible for the purpose of showing Defendant's knowledge and intent to possess with the intent to distribute the fentanyl charged in this case.  *See United States v. Jackson*, 619 F. App'x 189, 193 (3d Cir. 2015) (collecting cases and noting "[w]e have held that evidence of past distribution is relevant to prove intent to distribute in a later distribution trial, even to the extent of admitting prior convictions as well as uncharged conduct"); *United States v. Duggan*, No. 19-3220, 2021 U.S. App. LEXIS 35603, at *3-4 (3d Cir. Dec. 2, 2021) ("The probative value of Duggan's previous drug trafficking is obvious and consistent with our precedent"); *United States v. Byrd*, No. 17-299, 2022 U.S. Dist. LEXIS 124464, at *2 (W.D. Pa. July 14, 2022) ("In this case, where [d]efendant's knowledge and intent to distribute narcotics are directly at issue, the probative value of such evidence is not outweighed by any inherent danger of unfair prejudice."); *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (permitting use of Rule 404(b) evidence related to prior conspiracy to show that the defendant "did not unwittingly participate" in the charged crime); *compare with United States v. Watson*, No. 19-203, 2021 U.S. Dist. LEXIS 208062 (W.D. Pa. Oct. 28, 2021) (finding 2009 and 2011 drug trafficking convictions were impermissible propensity

evidence at trial for 2019 drug trafficking charges).[1]

Bottenfield's testimony as to Defendant's drug trafficking goes to her knowledge and intent to possess with intent to distribute the quantity of fentanyl discovered in Defendant's residence. Defendant's knowledge and intent are crucial elements to the charge against her and, as far as the Court is aware, will be at issue. As explained above, the probative value of Bottenfield's testimony is not outweighed by the danger of unfair prejudice. To minimize the risk of prejudice, Defendant may raise appropriate objections to specific testimony at trial and the Court will provide a proper limiting instruction as to any admitted 404(b) evidence.

### III.   Conclusion

For the reasons set forth above, the Court finds the Government may refer to Defendant's parole status on the date of the alleged offense, Defendant's parole conditions, and introduce the PBPP-11 form (ECF No. 126-2) and the Home Provider Agreement Letter (ECF No. 126-3) as evidence of the same. The Government may also call witness Amanda Bottenfield to provide testimony consistent with its 404(b) Notice (ECF No. 126). The Government is prohibited from introducing evidence or eliciting testimony relating to information regarding the falsified urine screens or Defendant's positive drug test on the date of the charged offense. The Government is also prohibited from introducing evidence or eliciting testimony relating to PBPP-10 form (ECF No. 126-1). An appropriate Order will follow.

DATE: October 13, 2023

Stephanie L. Haines
United States District Judge

---

[1] Additionally, Bottenfield's proposed testimony also relates to uncharged conduct, and the Third Circuit has stated that uncharged conduct is "simply not of the same prejudicial ilk as the identical past convictions." *United States v. Repak*, 852 F.3d 230, 248 (3d Cir. 2017).